## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Strike 3 Holdings, LLC,

      Plaintiff,

v.

John Doe, subscriber assigned IP address
24.118.140.122,

      Defendant.

**Case No. 18-cv-775 (PJS/SER)**

**ORDER**

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Plaintiff Strike 3 Holdings, LLC's ("Strike 3") Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference [Doc. No. 4]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court grants the motion.

## I.    BACKGROUND

On March 21, 2018, Strike 3 filed eight cases against John Doe defendants in the District of Minnesota: *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-768 (DSD/FLN); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-771 (DWF/HB); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-773 (JRT/DTS); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-774 (DWF/DTS); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-775 (PJS/SER); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-777 (JRT/BRT); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-778 (PJS/HB); and *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-779 (WMW/SER). Strike 3 alleges similar claims of copyright infringement in each case,

and has also filed in each case an ex parte motion requesting permission to serve a third-party subpoena before the Rule 26(f) pretrial scheduling conference.

Strike 3 alleges that the John Doe defendant ("Defendant") committed copyright infringement by unlawfully downloading and distributing Strike 3's copyrighted movies. (Compl.) [Doc. No. 1 ¶¶ 1, 4]. Strike 3 distributes its copyrighted movies through adult websites and DVDs. (*Id.* ¶ 3). According to Strike 3, Defendant used a BitTorrent file distribution protocol to download the movies and illegally distribute them over the internet. (*Id.* ¶ 4). An investigator employed by Strike 3, IPP International U.G., allegedly was able to establish a direct TCP/IP connection with Defendant's Internet Protocol ("IP") address while Defendant was using the BitTorrent file distribution network, and downloaded one or more copyrighted media files. (*Id.* ¶¶ 24–25). Strike 3 has not been able to identify Defendant other than by his or her IP address, but alleges that Defendant's Internet Service Provider ("ISP") Comcast Cable Communications, LLC ("Comcast") would be able to identify the alleged infringer by name and address using the IP address. (*Id.* ¶ 5).

Strike 3 filed its motion for leave to serve a third-party subpoena on April 19, 2018. Despite utilizing its investigator and hiring a forensic expert, Strike 3 contends that it has been able to identify Defendant only by his or her IP address, and that only Comcast can match the IP address with Defendant's identity. (Mem. of Law in Supp. of Mot.) [Doc. No. 6 at 1–2]. Strike 3 argues that it needs to learn Defendant's name and address so that it can investigate Defendant's role in the alleged copyright infringement and serve the summons and complaint on Defendant. (*Id.* at 2.) To accomplish this, Strike 3 seeks leave to serve a Rule 45 subpoena on Comcast before the Rule 26(f) conference is held in this matter.

In this District, two magistrate judges—the Honorable David T. Schultz and the Honorable Franklin L. Noel—have denied Strike 3's motions for early discovery, concluding that the defendants' privacy interests outweigh Strike 3's property interests. Order Dated Apr. 30, 2018, *Strike 3 Holdings*, No. 18-cv-773 (JRT/DTS) [Doc. No. 14] (Schultz, Mag. J.), *appeal docketed* (May 11, 2018) [Doc. No. 15]; Order Dated Apr. 30, 2018, *Strike 3 Holdings*, No. 18-cv-774 (DWF/DTS) [Doc. No. 13] (Schultz, Mag. J.), *appeal docketed* (May 11, 2018) [Doc. No. 14]; *Strike 3 Holdings LLC*, No. 18-cv-768 (DSD/FLN), 2018 WL 1924455 (D. Minn. Apr. 24, 2018) (Noel, Mag. J.), *appeal docketed* (May 8, 2018) [Doc. No. 15]. In contrast, two different magistrate judges—the Honorable Hildy Bowbeer and the Honorable Becky R. Thorson—have granted the motion and established procedural safeguards to protect defendants' identities. *Strike 3 Holdings*, No. 18-cv-771 (DWF/HB), 2018 WL 2278110 (D. Minn. May 18, 2018) (Bowbeer, Mag. J.); *Strike 3 Holdings*, No. 18-cv-778 (PJS/HB), 2018 WL 2278111 (D. Minn. May 18, 2018) (Bowbeer, Mag. J.); *Strike 3 Holdings*, No. 18-cv-777 (JRT/BRT), 2018 WL 2078707 (D. Minn. May 4, 2018) (Thorson, Mag. J.).

## II.    DISCUSSION

Before turning to the legal standard, the Court notes that this case follows the procedure the Eighth Circuit endorsed in a footnote in 2005. *See In re Charter Commc'ns, Inc. Subpoena Enf't Matter*, 393 F.3d 771, 775 n.3 (2005). Specifically, the court noted that

> copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity. However, organizations . . . can also employ alternative avenues to seek this information, such as "John Doe" lawsuits. In such lawsuits, many of which are now pending in district courts across the country, organizations . . . can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous "John Doe" defendant.

*Id.* In circumstances such as this case, "[o]nly the ISP . . . can link a particular IP address with an individual's name and physical address." *Id.* at 774.

Ten years later, the Eighth Circuit found that it was reasonable for a plaintiff suing under the Digital Millennium Copyright Act ("DMCA") to sue an ISP's subscriber without first investigating whether the subscriber was responsible for the infringement. *Killer Joe Nevada, LLC v. Does 1–20*, 807 F.3d 908, 912 (8th Cir. 2015).

With this background established, the Court turns to the precise legal issue here: whether Strike 3 is entitled to early discovery to determine the identity of the subscriber linked to the allegedly infringing IP address.

### A.    Legal Standard

Rule 26(d) prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).

The Eighth Circuit Court of Appeals has not adopted a standard to determine whether a court should permit expedited discovery. District courts within the Circuit, however, have generally applied a "good cause" standard. *See, e.g.*, *Planned Parenthood Ark. & E. Okla. v. Gillespie*, No. 4:15-cv-566-KGB, 2018 WL 1904845, at *1 (E.D. Ark. Mar. 20, 2018); *Nilfisk, Inc. v. Liss*, No. 17-cv-1902 (WMW/FLN), 2017 WL 7370059, at *7 (D. Minn. June 15, 2017) (Wright, J.); *Loeffler v. City of Anoka*, No. 13-cv-2060 (MJD/TNL), 2015 WL 12977338, at *1 (D. Minn. Dec. 16, 2015) (Leung, Mag. J.); *Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 455 (D.S.D. 2014); *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1050 (N.D. Iowa 2008); *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008).

In a recent *Strike 3* case, Judge Bowbeer, United States Magistrate Judge, described two recent decisions from the District of Connecticut that are instructive. *See Strike 3 Holdings, LLC*, 2018 WL 2278110, at *2–3 (citing *Malibu Media, LLC v. Doe*, No. 3:18-cv-590, 2018 WL 2045998, at *2 (D. Conn May 2, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 3:17-cv-1680, 2017 WL 5001474, at *2 (D. Conn. Nov. 1, 2017)). In both cases, the court relied on factors the Second Circuit Court of Appeals identified to determine whether there was good cause for early discovery. These factors are:

> "(1) the concreteness of the plaintiff's showing of a prima facie claim of actionable harm, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) the need for the subpoenaed information to advance the claim, and (5) the objecting party's expectation of privacy."

*Malibu Media*, 2018 WL 2045998, at *2 (cleaned up) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010));[1] *see also Strike 3 Holdings*, 2017 WL 5001474, at *2 (same). The court granted the request for early discovery in both cases, limited the plaintiffs' use of the information, and established procedural safeguards that allowed an opportunity for the defendants to contest the subpoena. *Malibu Media*, 2018 WL 5045998, at *7; *Strike 3 Holdings*, 2017 WL 5001474, at *6.

### B.    Analysis

The Court finds Judge Bowbeer's and Judge Thorson's analyses persuasive and grants the motion based on consideration of the factors described in *Arista Records*. The Court is sympathetic to the privacy concerns Judge Noel and Judge Schultz described. But the best way for the Court to determine what protection Comcast or Defendant is entitled to—if any—is for

---

[1]    In *Arista Records*, the court used these factors to consider whether the district court properly denied a motion to quash a third-party subpoena directed to a subscriber based on the subscriber's desire to preserve his or her anonymity. 604 F.3d at 119.

those parties to formally advance their arguments before the Court. Thus, this Order establishes procedures for those arguments to be fully developed if those parties wish to make them.

Turning to the *Arista Records* factors*,* the Court first concludes that Strike 3 has stated a prima facie copyright claim. Strike 3 alleges that it owns the copyrighted information, and that Defendant copied it without Strike 3's authorization. (Compl. ¶¶ 2, 4, 23, 37). This is all that the Eighth Circuit requires to establish a copyright claim. *Warner Bros. Entm't v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011) ("The elements of copyright infringement are (1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work.").

Second, Strike 3's discovery request is specific because it seeks only Defendant's name and address. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 17-cv-9654, 2018 WL 1737217, at *1 (S.D.N.Y. Mar. 12, 2018) ("Strike 3 seeks only the name and address of the subscriber associated with the defendant's IP address, which is a limited and highly specific set of facts.").

Third, there are no alternative ways to obtain the requested information. Strike 3's forensic analyst avers that Comcast is the only entity that can match the infringing IP address to the subscriber to identify the Defendant. (Decl. of John S. Pasquale) [Doc. No. 11 ¶ 10]. As Judge Bowbeer noted, "[c]ourts routinely find this to be true." *Strike 3 Holdings*, 2018 WL 2278110, at *4 (citing cases). The DMCA permits a copyright owner to "request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection." 17 U.S.C. § 512(h)(1). The provision, however, "does not allow a copyright owner to request a subpoena for an ISP which merely acts as a conduit for data transferred between two internet users." *In re Charter Commc'ns*, 393 F.3d at 776. Because Comcast was the merely the conduit between two internet users, the DMCA does not authorize a subpoena to identify the alleged infringer. *See Strike 3 Holdings*, 2018 WL

2278110, at *4 (citing cases). Even though the DMCA does not explicitly authorize a subpoena, it does not prohibit a subpoena under these circumstances. *See id.* As stated above, Rule 26(d)(1) allows the Court to order early discovery "from any source" if the moving party shows good cause.

Fourth, Strike 3 must learn Defendant's identity to serve the summons and complaint. Without this information, Strike 3 cannot prosecute its claim. *See id.* at *5; *see also* Fed. R. Civ. P. 10(a) (stating that "[t]he title of the complaint must name all the parties").

Fifth, the Court concludes that Strike 3's rights to use the judicial system to protect its copyrights outweighs Defendant's expectation of privacy in light of the limited protective order the Court establishes here.

In the Fourth Amendment context,

courts have held that subscribers do not have a legitimate expectation of privacy in files downloaded or distributed with file-sharing software, or even in a computer on which file-sharing software is installed. *United States v. Stults*, 575 F.3d 834, 842 (8th Cir. 2009). Some courts have found this principle relevant in the civil context where a plaintiff seeks to discover the identity of a defendant accused of copyright infringement. *See, e.g.*, *Malibu Media*, 2018 WL 2045998, at *4–5.

*Strike 3 Holdings*, 2018 WL 2278110, at *5. Further, there are exceptions to the DMCA's general prohibition that cable operator may not disclose a subscriber's personal information. *See* 47 U.S.C. § 551(c)(1). As applicable here, one such exception allows a cable operator to disclose this information pursuant to a court order as long as the cable operator notifies the subscriber. § 551(c)(2)(B). Courts have authorized subpoenas under this portion of the DMCA to allow a plaintiff to identify a defendant associated with a particular ISP. *See Strike 3 Holdings*, 2018 WL 2278110, at *5 (citing cases). Additionally, to the extent that Comcast objects to this Order under the DMCA or for any other reason, it may seek a protective order or move to quash the subpoena

if there is a legitimate reason to do so. *See* Fed. R. Civ. P. 26(c) (governing protective orders); Fed. R. Civ. P. 45(d) (governing protections for a person or entity subject to a subpoena).

Defendant, as the person associated with the IP address, may not be the person who engaged in the alleged infringing behavior. *See Media Prods., Inc. v. Does 1–26*, No. 12 Civ. 3719, 2012 WL 2190613, at *1 (S.D.N.Y. June 12, 2012). "[T]he true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering an internet connection." *Id.* This creates "a real risk that defendants might be falsely identified and forced to defend themselves against unwarranted allegations." *Id.* The risk here, however, is mitigated by limiting Strike 3's use of the information and through the instructions below that allow both Comcast and the Defendant to seek a more expansive protective order.

Because the *Arista Records* factors demonstrate good cause for early discovery, the Court grants the motion as described below.

## III.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Strike 3 Holdings, LLC's Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference [Doc. No. 4] is **GRANTED** as follows:

1.    Plaintiff may serve a subpoena pursuant to Federal Rule of Civil Procedure 45 on Defendant's ISP, Comcast Cable Communications, LLC ("Comcast"). The subpoena must be limited to one category of documents identifying the particular subscriber identified in the Complaint. The requested information must be limited to the name and address of the subscriber assigned to the IP address identified in the Complaint during the

time period/s of the alleged infringing activity referenced in Exhibit A to the Complaint [Doc. No. 1-1]. Plaintiff must serve a copy of this Order together with the subpoena.

2.    The subpoena must set a date for production that is not less than sixty-five (65) days from the date of the subpoena. Nothing in this Order precludes Comcast from seeking a protective order if it determines there is a legitimate basis for doing so.

3.    Within fourteen (14) days after service of the subpoena, Comcast must notify the subscriber whose identity is sought that his or her name and address have been subpoenaed by Plaintiff. Notification may be made by any reasonable means, including by written notice sent to the subscriber's last known address via first-class mail. Comcast must provide a copy of this Order with the required notice to the subscriber.

4.    The subscriber shall have forty-five (45) days from the date of the notice from Comcast to move to quash the subpoena. If the subscriber files a motion to quash the subpoena within that time, Plaintiff must immediately notify Comcast of that motion and Comcast shall not produce the information until that motion has been decided. In no event shall Comcast produce the requested information to Plaintiff earlier than sixty-five (65) days from the date of the subpoena.

5.    Comcast must give immediate notice to the subscriber upon production to Plaintiff of the requested information, including the specific information produced and the date the production was made.

6.    Whether or not the subscriber moves to quash the subpoena, the subscriber may at any time prior to production of the information by Comcast or up to forty-five (45) days after such production file a motion seeking a protective order that permits the subscriber to

proceed anonymously or imposes other terms or limitations as provided by Federal Rule of Civil Procedure 26(c)(1).

7.   Plaintiff must keep the information received from Comcast confidential and must not disclose it publicly or to third persons for forty-five (45) days following production by Comcast or, if a timely motion for protective order is filed by the subscriber, until that motion is ruled on by the Court, whichever is later. If the subscriber fails to file a timely motion for a protective order, this limitation on the disclosure of the information will terminate after forty-five (45) days following production by Comcast.

8.   If the subscriber includes identifying information in his or her motion for a protective order, the Court finds good cause to order the documents containing that information filed under temporary seal until the Court has the opportunity to rule on the motion and to consider whether such documents should remain under seal.

9.   Plaintiff may use any information produced by Comcast in response to the subpoena only for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint and for no other purpose. This limitation on the use of the information will not expire absent further order of the Court.

10.  On or before August 23, 2018, Plaintiff must file a status report on CM/ECF with the Court briefly outlining the progress of the discovery authorized by this Order. The status report must not include any identifying information about the subscriber.

11.  No other discovery is authorized at this time.

Dated: May 25, 2018

s/ Steven E. Rau
STEVEN E. RAU
United States Magistrate Judge